PER CURIAM.

(No. 5607—Claimant )

GOLDA D. HANKLA, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 4, 1973.*
*Petition of Respondent for Rehearing granted March 13, 1974.*
*Reaffirm prior award to Claimant May 15, 1974.*

HARRIS, HOLBROOK AND LAMBERT, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; LEE D. MARTIN and WILLIAM E. WEBBER, Assistant Attorneys General, for Respondent.

PERLIN, C. J.

Claimant Golda D. Hankla seeks recovery of damages of $14,000 which she alleges were caused by the negligence of Respondent when it let a fire from the trash dump at the Anna State Hospital burn several buildings and other material located upon her adjacent property.

The evidence shows that on the date of the fire,

March 8, 1968, Claimant was the owner of approximately forty acres in Union County, Illinois, which was bordered on the south by land owned by the Anna State Hospital.

The Claimant testified that prior to March 8, 1968, improvements consisting of a house, a barn, a storage shed or smokehouse and a combination poultry house, had been located on the property, all of which were destroyed on the day in question, as well as a number of large trees and ground cover, resulting in bulldozing, "which upset the land and the terrain."

Several witnesses testified that a fire had been burning at the Anna State Hospital Dump on the morning in question; Mr. Leland Whitaker, who lived on a farm adjacent to claimant's property, testified that the day in question was windy and that he observed smoke coming from the dump area all day. Herbert Modglin, a forest fire warden, estimated that approximately 32 acres of claimant's land had been burned and that on March 8, 1968, there was wind from the southwest with gusts up to 25 miles per hour. Modglin had examined claimant's premises and noted that the path of the fire could be traced to the hospital's dump. An aerial photograph also supports the conclusion of the origin of the fire, all of which testimony rebuts respondent's theory that the origin of the fire might have come from another source.

On cross examination, claimant testified that the house and buildings had been vacant from February, 1953, until March, 1968, the date of the fire. The property had not produced any income during that time, and that in April, 1965, insurance agent, John C. Cassel had cancelled the fire insurance policy "due to the condition of your buildings."

Claimant further testified that the property was appraised on April 7, 1966, at a value of $2,700, by Mr. Rayburn Ice and Mr. Lloyd Sitter, real estate appraisers for her mother's inheritance tax return which was filed by claimant as executor of the estate. The affidavit of valuation filed with the Inheritance Tax Division of the State of Illinois and with the Clerk of the Court at the Union County Courthouse contained the following statement:

"8. That the buildings (house and barn) on parcel 3, a farm of forty acres, have sustained extensive damage from vandals and are in very poor condition from neglect and unoccupancy; that the farm land in Parcel 3 is overgrown and in need of clearing and rehabilitation."

The house had been constructed in 1912 and was wired for electricity, although it did not have inside plumbing. Claimant stated that she had owned the house since 1965, and had spent nothing to repair it since that time, although she had planned to repair it.

Lowell Young testified for claimant that he is a licensed real estate broker and expressed his opinion that the market value of the Hankla property after the fire was between $4,000 to $6,000. He estimated that the fair market value prior to the burning was $18,000 to $20,000. Mr. Young based his estimate on the loss of the buildings, the fire over the land and the damages to the trees, although he had never been on the property prior to the fire. He had obtained his knowledge of the prior condition from claimant and did not know whether it was habitable before the fire. Mr. Young further testified that had the land not had the fire, it would be worth approximately $8,000 without the buildings.

Lloyd Sitter who appeared as a witness for respondent, testified that the value of the land at the time of the hearing was between $55 and $100 per acre [$3,400 to $4,000].

Claimant states that: (1) "Fire is a dangerous element and one who sets it out must be prepared to take care of it and prevent its escaping and doing damage to others or be liable for the consequences. (*Indiana I.&I.R.R. Co.* v. *Hawkins,* 81 Ill.App. 570 (1898))" Claimant further states that "The measure of damages in a case where buildings are totally destroyed as well as injury to trees and vegetation due to fire is the general, universal rule, that is, the difference between the fair value of the premises immediately before and after the fire. *Clark* v. *Public Service Co.,* 278 Ill. App. 426 (1934); *Central National Bank & Trust Co. of Peoria* v. *Central Illinois Light Co.,* 212 NE 2d 489 (1966)."

The evidence supports Claimant's contention that Respondent was negligent in failing to contain the fire it started in the Anna State dump and that such negligence was the proximate cause of the fire upon claimant's property.

However, claimant has failed to prove that the fair market value of the property before the fire was in any way close to the $18,000 to $20,000 she claims. Indeed, claimant's own affidavit stated that less than two years before the fire, the property, including the buildings, was worth no more than $2,700, and that the buildings were damaged and in very poor condition. No repairs had been made subsequent to that appraisal.

Claimant has presented no evidence, other than the estimate of one who had never seen the improvements before the fire, that the loss of the buildings in any way lessened the value of the property.

It would appear from the testimony of Appraiser Lowell Young, that the difference between the fair market value of the land before and after the fire was

approximately $2,000. Claimant is hereby awarded the sum of $2,000.